**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BLACKWALL GROUP, LLC,**

        **Plaintiff,**

-vs-                                          **Case No. 6:10-cv-1620-Orl-31DAB**

**SICK BOY, LLC,**

        **Defendant.**

## ORDER

This matter comes before the Court on the Motion for Preliminary Injunction (Doc. 10) filed by the Plaintiff, Blackwall Group, LLC ("Blackwall"), the response in opposition (Doc. 17) filed by the Defendant, Sick Boy, LLC ("SBLLC"), and the reply (Doc. 22) filed by Blackwall.

**I.    Background**

SBLLC sells T-shirts, baseball caps and other such items via the Internet and in retail outlets located throughout the United States. Many of the items sold by SBLLC are adorned with a "Sick Boy Motorcycles" logo or variations thereof. The company is based in Connecticut, maintains a website at "www.sickboy.com", and has been in business since 1999. SBLLC holds a federal registration for the "Sick Boy" mark for use with "t-shirts, sweatshirts, jackets, [and] hats."

The Plaintiff operates a Daytona Beach bar and restaurant named "Sickboy's Bad Habit Lounge," which opened in October 2010. So far as the record discloses, the bar does not sell articles of clothing. Blackwall maintains a website at "www.sickboys.com". Blackwall filed the instant suit seeking a declaratory judgment that its trade name, domain name, and logo artwork do

not infringe on SBLLC's trademark. SBLLC disagrees and has counterclaimed, contending that Blackwall's activities have caused confusion and infringe on its trademark. By way of the instant motion, SBLLC seeks to enjoin any further (alleged) infringement.

## II.     Legal Standards

An injunction is an extraordinary and drastic remedy not to be granted unless the movant has clearly established the burden of persuasion as to the prerequisites. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). A party seeking a preliminary injunction for trademark infringement must establish four elements: (1) that there is a substantial likelihood of success on the merits; (2) that the party would be irreparably harmed if injunctive relief were denied; (3) that the threatened injury to the trademark owner outweighs whatever damage the injunction may cause to the alleged infringer; and (4) that the injunction, if issued, would not be adverse to the public interest. *Nitro Leisure Products, L.L.C. v. Acushnet Co.*, 341 F.3d 1356, 1359 (11th Cir. 2003).

Trademarks are "any word, name, symbol, device, or any combination thereof [used] to identify and distinguish [one's] goods . . . from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127. Trademarks are not merely descriptive; they answer the question "Who made it?" rather than "What is it?" *See* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 3:6 (4th ed. 2000). To prevail on a claim of trademark infringement, a plaintiff must show (1) that it had a valid trademark and (2) that the defendant adopted an identical or similar mark such that consumers were likely to confuse the two. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1216 (11th Cir. 2000). The Plaintiff's use of the mark must also predate the defendant's potentially confusing mark. *Id.*

The United States Court of Appeals for the Eleventh Circuit has identified seven factors to be considered when analyzing the likelihood of confusion between two marks: (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public. *Tana v. Dantanna's*, 611 F.3d 767, 775 (11th Cir. 2010) (citing *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1360 (11th Cir.2007)). Evidence of actual confusion between trademarks is not necessary to a finding of likelihood of confusion, although it is the best such evidence. *E. Remy Martin & Co., S.A. v. Shaw-Ross Intern. Imports, Inc.*, 756 F.2d 1525, 1529 (11th Cir. 1985). Likelihood of confusion is a question of fact, but it may be determined as a matter of law. *Welding Servs.*, 509 F.3d at 1361.

The Eleventh Circuit recognizes four categories of distinctiveness, listed in ascending order of strength: "(1) generic – marks that suggest the basic nature of the product or service; (2) descriptive – marks that identify the characteristic or quality of a product or service; (3) suggestive – marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful – marks that bear no relationship to the product or service, and the strongest category of trademarks." *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 797-98 (11th Cir. 2003). Suggestive and arbitrary or fanciful marks are deemed "inherently distinctive" because "their intrinsic nature serves to identify a particular source of a product" and are generally entitled to

trademark protection. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992). Generic marks, on the other hand, are generally incapable of receiving trademark protection and may never be registered as trademarks under the Lanham Act. *Welding Servs.* at 1358; *Coach House Rest., Inc. v. Coach & Six Rests. Inc.*, 934 F.2d 1551, 1560 (11th Cir. 1991).

**III.    Analysis**

For purposes of the instant motion, Blackwall does not dispute the validity of SBLLC's mark.  Thus, SBLLC's likelihood of success on the merits boils down to a question of the likelihood of customer confusion between the party's marks.  This requires an assessment of the following seven factors.

    A.    Strength of SBLLC's mark

SBLLC argues that its "Sick Boy" mark falls into the fourth and strongest category of marks: arbitrary or fanciful.  In SBLLC's view, the term "Sick Boy" does not suggest the basic nature of its products – generally, clothing and accessories – and does not suggest a characteristic or quality of its goods and services.  Though not disputing this assertion, Blackwall contends that the mark has been weakened due to its use by third parties. *See, e.g.*, *Frehling Enterprises, Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1336 (11th Cir. 1999) (stating that assessment of third party use is "important" in gauging strength of mark and that the less that third parties use the mark, the stronger it is, and the more protection it deserves).  Blackwall presents evidence of Sick Boy t-shirts for sale from other companies,[1] audio and visual artists selling their work under the

---

[1] Including shirts offered by the punk rock band Social Distortion, whose self-titled 1990 album included a song titled "Sick Boys".

Sick Boy name, a number of songs titled "Sick Boy", a "Sick Boys" film and a character named Sick Boy in the 1996 film "Trainspotting", a "Sick Boys" motorcycle club, a concert promotions company called "Sickboy Productionz", and at least two tattoo parlors with Sick Boy in their names.

Although the Plaintiff has presented numerous instances in which "Sick Boy" or "Sick Boys" has been used by third parties, on this record it does not appear that the use is so extensive or widespread as to significantly weaken the Defendant's mark.  Accordingly, the Court finds that, for purposes of the instant motion, SBLLC's mark is strong and entitled to significant protection.

 B. <u>Similarity of the party's marks</u>

SBLLC identifies Blackwall's mark as the term "Sick Boy's", which it describes as "identical" to its own mark, aside from an apostrophe and the letter "s".  Blackwall responds that its business name is not "Sick Boy's" but "Sick Boy's Bad Habit Lounge," and that with one minor exception,[2] the entire phrase is included on signs, advertisements, other promotional material and the like.  Photos in the record support Blackwall's contention that it uses the entire phrase on the sign outside the building, on its website, and in its advertising.  Furthermore, those photos show that the "o" in "Boy's" has been replaced by a stylized flaming vinyl record, suggestive of a rock music-themed establishment.  There is no evidence that the bar employs elements commonly associated with the motorcycle lifestyle, such as skulls or the so-called

---

[2] According to the affidavit of one of the bar's owners, James Chirillo, a sample run of promotional shirts included the entire phrase on the back of the shirt but only the "Sick Boy's" portion on the front. Chirillo stated that, for the actual t-shirt order, the bar's full name was added to the front, along with "Daytona Beach, FL."  Chirillo also states that the bar did not sell the t-shirts, but instead either gave them away or kept them for employees to wear.

motorcycle cross, in conjunction with its name.  In contrast, the record shows that numerous Sick Boy Motorcycle products incorporate skulls into their design.

Because of these differences, the Court finds that the name of Plaintiff's business is only somewhat similar to the Defendant's mark.

        C.      <u>Similarity between the goods and services offered under the two marks</u>

SBLLC sells motorcycle lifestyle-themed clothing.  Blackwall operates a rock-themed (or, perhaps, punk rock-themed) bar and restaurant.  There is some overlap between the rebellious attitude the two parties seek to tap into amongst their customers.  Still, the products they offer are distinctly different, particularly given the evidence that Blackwall does not sell t-shirts or other articles of clothing bearing the bar's name.  The Court finds that there is very little similarity between the goods and services offered under the two marks.

        D.      <u>Similarity of the actual sales methods used by the parties, such as their sales outlets and customer base</u>

The parties' sales outlets and customer bases are mostly distinct.  SBLLC offers its products via the internet and for sale in retail outlets owned and operated by third parties, while Blackwall operates a single bar and restaurant location in Daytona Beach.  Based on the evidence in the record, the bar's web site, unlike SBLLC's web site, does not offer items for sale.

SBLLC does set up temporary retail outlets in locations where motorcycle-themed events are being held – including, twice a year, in Daytona Beach, which hosts "Bike Week" in March and "Biketoberfest" in October.  In addition, according to the affidavit of Douglas Asermely, an owner and principal of SBLLC, the Defendant's products are sold in at least two third-party outlets within a few miles of the Plaintiff's bar.  Even given their decisions to offer products for sale in or

near Daytona Beach, Florida, it does not appear that there is much similarity between the parties' sales outlets.

In addition, it appears that the parties' customer bases have a minimal amount of overlap. Blackwall markets itself as a hangout for, among others, fans of rock music, both through its stylized-album logo and by featuring live music at its establishment. SBLLC promotes its business by, among other things, sponsoring concerts by rock musicians, but appears to market itself primarily to fans of the motorcycle lifestyle. Although both are associated in some fashion with live rock music, at least arguably that music is part of the product that Blackwall is selling, while SBLLC uses that music to promote the sale of its actual product – *i.e.*, clothing and accessories.

To look at the customer bases a different way, a single individual could obviously be included in both parties' target audiences. In that sense, there is some overlap. But it would not appear that someone would be less likely to buy one of the Defendants' t-shirts because he or she had a burger and a beer at the Plaintiff's establishment, or vice versa. From that perspective, there is little overlap between the parties' customer bases.

E.   Similarity of advertising methods

Both parties operate websites to advertise their businesses, and both seek to attract customers by way of rock music – either by hosting bands (Blackwall) or by sponsoring them (SBLLC). Given the ubiquity of such methods of advertising, however, the Court does not find that this factors provides much support for SBLLC's case.

      F.      <u>Intent of Blackwall to misappropriate SBLLC's good will</u>

Aside from the similarity of the names at issue, there is no evidence in the record that Blackwall intended to misappropriate SBLLC's good will.

      G.      <u>Existence and extent of actual confusion in the consuming public</u>

SBLLC presents affidavits from three Daytona Beach residents who state that they themselves believed that Sick Boy's Bad Habit Lounge might be affiliated with the Defendant's clothing company, or that they heard others asking whether such an affiliation existed, or both.[3] Although these affidavits at least arguably suggest that some individuals may have been confused about the relationship between the bar and the clothing company, the Court finds that they do not establish that such confusion existed. There is no evidence that anyone had dinner or drinks at Sick Boy's Bad Habit Lounge because they believed that it was owned by or affiliated with Sick Boy Motorcycles or SBLLC. Indeed, the very fact that individuals were asking the question could suggest the opposite conclusion – *i.e.*, that they had not been misled into believing the businesses were affiliated.

After considering the seven factors, the Court concludes that the Defendant has not made

---

[3] Blackwall complains that the third-party queries are inadmissible hearsay, but they are not being offered to prove the truth of the matter asserted – *i.e.*, that the Defendant owns or operates Sick Boy's Bad Habit Lounge.

the necessary showing that consumers are likely to be confused by the name of the Plaintiff's business, and therefore has failed to show a substantial likelihood of success on the merits. Accordingly, the motion will be denied.

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Preliminary Injunction (Doc. 10) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 11, 2011.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party